**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **LAKEVIEW LOAN SERVICING, LLC,** *Plaintiff*, | § | |
| **v.** | § | **MO:25-CV-00499-DC-RCG** |
| **MICHELLE KELLY; AQUA FINANCE, INC.; MIDLAND QUAIL RIDGE HOMEOWNERS ASSOCIATION, INC.; and THE UNITED STATES OF AMERICA, ON BEHALF OF THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT;** ***Defendants*.** | § | |

**REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE**

BEFORE THE COURT is Plaintiff Lakeview Loan Servicing, LLC's ("Plaintiff") Motion for Default Judgment. (Doc. 32).[1] This matter is before the undersigned United States Magistrate Judge through a standing order of referral pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration, the Court **RECOMMENDS** Plaintiff's Motion for Default Judgment be **GRANTED**. (Doc. 32).

## I. BACKGROUND

This action was commenced in this Court on October 28, 2025, against Michelle Kelly; Aqua Finance, Inc.; Midland Quail Ridge Homeowners Association, Inc.[2]; and the United States of America, on behalf of the Secretary of Housing and Urban Development.[3] (Doc. 1).

1. All page number citations are to CM/ECF generated pagination unless otherwise noted.

2. On April 29, 2026, the Court entered a Consent Order as to Midland Quail Ridge Homeowners Association, Inc. (Doc. 30).

3. On March 19, 2026, the Court entered a Consent Order as to the United States of America. (Doc. 17).

The relevant factual allegations are as follows. On November 8, 2019, Defendant Michelle Kelly ("Defendant Kelly") executed to Nations Reliable Lending LLC a Note in which she promised to pay the sum of $281,310.00, with interest. (Doc. 1 at 3). Plaintiff is the current owner and holder of the Note. *Id*. Subsequently, the Note was secured by a Deed of Trust executed by Defendant Kelly encumbering a piece of real property. *Id*. The property in question is commonly known as 903 Chaparral Street, Midland, Texas 79706 (the "Property"), more particularly described as:

> LOT 12, BLOCK 5, QUAIL RIDGE ADDITION SECTION 2, AN ADDITION TO THE CITY OF MIDLAND, MIDLAND COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF OF RECORD IN CABINET G, PAGE 192, PLAT RECORDS OF MIDLAND COUNTY, TEXAS.

*Id*. at 3. Plaintiff is the beneficiary of the Deed of Trust. *Id*. Defendant Kelly breached and has failed to cure her respective loan agreement obligations by failing to make payments since July 1, 2024. *Id*. at 5. As of May 29, 2026, to pay off the loan in full, Defendant Kelly owes $363,660.63. (Doc. 32 at 4).

Defendant Aqua Finance, Inc. is named as a defendant because it claims an interest in the Property under the terms of that certain UCC Financing Statement filed and recorded on August 23, 2021, as instrument number 2021-26198 in the Official Public Records of Midland County. (Doc. 1 at 6). Plaintiff alleges this interest is subordinate and inferior to Plaintiff's interest in the Property. *Id*. Plaintiff does not seek monetary relief from Defendant Aqua Finance, Inc. *Id*.

Summons in this case were issued as to Defendant Kelly on October 29, 2025, and to Defendant Aqua Finance, Inc. on December 29, 2025. (Docs. 4, 6). On January 24, 2026, Plaintiff filed executed summons as to Defendant Aqua Finance, Inc., showing it was personally served via its registered agent at 211 E. 7th Street, Suite 620, Austin, Texas 78701, on January 8,

2026. (Doc. 8). On February 13, 2026, Plaintiff filed executed summons as to Defendant Kelly. (Doc. 13). Plaintiff's proof of service shows Defendant Kelly was personally served by process server at 730 Duke Pl, Tyler, Texas 75704, on February 2, 2026. *Id*. To date, Defendants Kelly and Aqua Finance, Inc. have failed to answer Plaintiff's Complaint or otherwise make an appearance in this lawsuit. On March 1, 2026, Plaintiff filed a Motion for Clerk's Entry of Default. (Doc. 15). On March 19, 2026, the Court entered an Order to Show Cause as to why Defendants Kelly and Aqua Finance, Inc. had not filed an Answer. (Docs. 19, 20). After no appearance was made, on April 30, 2026, the Clerk of Court entered default against Defendants Kelly and Aqua Finance, Inc. (Doc. 31). On May 14, 2026, Plaintiff filed the instant Motion for Default Judgment. (Doc. 32).

Plaintiff brings a breach of contract claim against Defendant Kelly and seeks a judgment declaring that it may carry out a judicial foreclose on the Property. (Docs. 1 at 3, 7; 32 at 5). A hearing was held on the instant Motion for Default Judgment on June 23, 2026. (Doc. 36). Accordingly, this matter is now ripe for disposition.

## II. LEGAL STANDARD

After entry of default and upon a motion by the plaintiff, Federal Rule of Civil Procedure 55 authorizes the Court to enter a default judgment against a defendant who fails to plead or otherwise defend the suit. FED. R. CIV. P. 55(b). However, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Savs. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). Accordingly, "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212

(5th Cir. 1996). Instead, the district court "has the discretion to decline to enter a default judgment." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

In determining whether to enter a default judgment, courts utilize a three-part test. *See United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008). First, courts consider whether the entry of default judgment is procedurally warranted. *Id*. The factors relevant to this inquiry include:

> (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893. Second, courts assess the substantive merits of the plaintiff's claims, determining whether the plaintiff set forth sufficient facts to establish his entitlement to relief. *See 1998 Freightliner*, 548 F. Supp. 2d at 384. In doing so, courts assume that, due to its default, the defendant admits all well-pleaded facts in the plaintiff's complaint. *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Third, courts determine what form of relief, if any, the plaintiff should receive in the case. *Id.*; *1998 Freightliner*, 548 F. Supp. 2d at 384. Generally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

## III. Discussion

Applying the three-part analysis detailed above, the Court finds Plaintiff is entitled to a default judgment against Defendants Kelly and Aqua Finance, Inc.

### A. Default Judgment is Procedurally Warranted

In light of the six *Lindsey* factors enumerated above, the Court finds that default judgment is procedurally warranted. First, Defendants Kelly and Aqua Finance, Inc. have not filed any responsive pleadings or otherwise appeared in this case. Consequently, there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact."). Second, Defendants Kelly and Aqua Finance, Inc.'s total failure to respond has brought the adversarial process to a halt, effectively prejudicing Plaintiff's interests. *Lindsey*, 161 F.3d at 893. Third, the grounds for default are "clearly established" since over the course of this case, Defendants Kelly and Aqua Finance, Inc. have not responded to the summons and Complaint, the Court's Show Cause Order, the Entry of Default, or Plaintiff's Motion for Default Judgment. *See J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d 109, 113 (D.D.C. 2011) (finding default judgment is appropriate if defendants are totally unresponsive and the failure to respond is plainly willful, as reflected by the parties' failure to respond either to the summons and complaint, the entry of default, or the motion for default judgment).

Fourth, there is no evidence before the Court indicating Defendants Kelly and Aqua Finance, Inc.'s silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, Defendants Kelly and Aqua Finance, Inc. have had over four months to respond to Plaintiff's claims or otherwise appear in this matter. Consequently, any purported harshness of a default judgment is mitigated by their inaction for this lengthy time period. *United States v. Rod Riordan Inc.*, No. 17-CV-071, 2018 WL 2392559, at *3 (W.D. Tex. May 25, 2018). Finally, the Court is not aware of any facts that give rise to "good cause" to set aside the default if challenged by Defendants Kelly and Aqua Finance, Inc. *Lindsey*, 161 F.3d at 893. Therefore, the Court finds default judgment is procedurally warranted under these circumstances.

**B. Default Judgment is Substantively Warranted**

Due to the entry of default, Defendants Kelly and Aqua Finance, Inc. are deemed to have admitted the allegations outlined in Plaintiff's Complaint. *See Nishimatsu Constr.*, 515 F.2d at 1206. Even so, the Court must review the pleadings to determine whether Plaintiff pleaded a sufficient basis for its claims to relief. *See id*. Federal Rule of Civil Procedure 8 guides this analysis:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (internal citations and footnote omitted) (alteration in original). This "low threshold" is less rigorous than that under Rule 12(b)(6). *Id*.

Here, Plaintiff's sole cause of action is a breach of contract claim against Defendant Kelly. (Doc. 1 at 3). In Texas, a breach of contract claim requires: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Intern., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, LLC*, 51 S.W.3d 345, 351 (Tex. Ct. App.—Houston [1st. Dist.] 2001, reh'g overruled)). Here, on November 8, 2019, Defendant Kelly executed a Note promising to pay the sum of $281,310.00, with interest. (Docs. 1 at 3, 1-1 at 2). Plaintiff is the holder of the Note. (Docs. 1 at 3, 1-1 at 8, 23). Defendant Kelly then executed a Deed of Trust to secure

performance of the trustor's obligations under the Note; the Deed of Trust was assigned to Plaintiff. (Docs. 1 at 3, 1-1 at 23). Plaintiff performed completely under the terms of the Loan Agreement, but Defendant breached the terms by failing to tender payments. (Doc. 1 at 4). Payments on the Note have gone unpaid since July 1, 2024, and the current unpaid balance as of May 29, 2026, is $363,660.63. (Doc. 32 at 4). Defendant Kelly was given the opportunity to cure the default but failed to do so. (Doc. 1 at 5). Defendant Kelly has directly and proximately caused damage to Plaintiff as the Note remains unpaid. *Id*. Thus, Plaintiff has stated a claim for breach of contract.

**C. Plaintiff's Right to Relief**

As previously stated, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp.*, 605 F.2d at 857. On June 23, 2026, pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court held an evidentiary hearing covering the issue of remedy. (Doc. 36). Plaintiff seeks a final judgment allowing a judicial foreclosure of the Property due to Defendant Kelly's loan default, containing post-judgment interest, as well as attorney fees and costs. (Doc. 32 at 5). At the hearing, Plaintiff's counsel pointed to the affidavit of indebtedness submitted by Jacqueline Gates, an employee for LoanCare, LLC, which is the mortgage servicer on behalf of Plaintiff. (Doc. 32-2 at 2). Ms. Gates affirmed the authenticity of the Note and Deed of Trust and confirmed that Defendant Kelly is in default, owing $363,688.63 as of May 29, 2026. Additionally, at the hearing, Plaintiff's counsel updated the amount owed: as of June 23, 2026, Defendant Kelly owes $367,025.91, which continues to accrue a per diem at $62.32 each day. Plaintiff's counsel again reiterated that it is not seeking damages as to Defendant Aqua Finance, Inc.

**1. Judicial Foreclosure**

"In determining whether a party is entitled to foreclose on a promissory note secured by real property, a federal court applies the substantive law of the forum state, in this case Texas." *U.S. Bank Nat'l Assoc. v. Vallejo*, No. 16-CV-00009, 2016 WL 4400314, at *4 (W.D. Tex. Aug. 16, 2016) (citing *Resolution Tr. Corp. v. Starkey*, 41 F.3d 1018, 1023 (5th Cir. 1995)). "Under Texas law, lenders have a substantive right to elect judicial or nonjudicial foreclosure in the event of a default . . . ." *Douglas v. NCNB Tex. Nat'l Bank*, 979 F.2d 1128, 1130 (5th Cir. 1992). To obtain a foreclosure, Plaintiff is required to show "(1) the existence of a note secured by real property; (2) that some part of the note is due and unpaid; and (3) that the real property subject to the lien is the same property that it seeks to foreclose." *TFHSP, LLC Series 10147 v. U.S. Bank Nat'l Ass'n*, No. 14-CV-2589, 2016 WL 2856006, at *3 (N.D. Tex. Apr. 18, 2016); *Rinard v. Bank of Am.*, 349 S.W.3d 148, 152 (Tex. App.—El Paso 2011, no pet); *Ocwen Loan Servicing LLP v. Smalley*, No. 14-CV-03039, 2015 WL 9873741, at *3 (N.D. Tex. Nov. 6, 2015); *Thomas v. Ocwen Loan Servicing, LLC*, No. 12-CV-447, 2013 WL 30653, at *5 (N.D. Tex. Jan. 3, 2013) (addressing the distinction between a foreclosure of a purchase money loan and a home equity lien). Because the Court finds Plaintiff sufficiently established it is the owner of the Note, part of the Note is due and unpaid, and the property subject to the lien is the same property it seeks to foreclose, Plaintiff can enforce its rights and properly elect to proceed with judicial foreclosure. (*See* Docs. 1, 32).

The relief awarded in "[a] default judgement must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). Because Defendant Kelly has admitted all well-pleaded factual allegations in Plaintiff's Complaint as true, the Court concludes

Plaintiff may foreclose on the Property. Thus, the Plaintiff's request for a judgment that it may conduct a judicial foreclosure on the Property should be granted. (Doc. 32).

**2. Post-Judgment Interest**

In its Motion for Default Judgment, Plaintiff also requests post-judgment interest at the legal rate until paid in full. (Doc. 32 at 5). "The issue of post-judgment interest on a judgment entered in federal court is governed by federal law." *Lohr v. Gilman*, No. 15-CV-1931, 2018 WL 6199290, at *11 (N.D. Tex. Nov. 28, 2018) (citing *Hall v. White, Getgey, Meyer Co.*, 465 F.3d 587, 594–95 (5th Cir. 2006)); *First Horizon Home Loans v. Sec. Mort. Corp.*, No. 09-CV-2182, 2010 WL 3659908, at *2 (N.D. Tex. Sept. 16, 2010) ("Regardless of whether a cause of action is based on state law or federal law, federal law determines post-judgment interest.") (citing *Bos. Old Colony Ins. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002) (noting that federal post-judgment interest applies even in diversity cases)). The statute 28 U.S.C. § 1961 "provides, in pertinent part, that 'interest shall be allowed on any money judgment in a civil case recovered in a district court' and that such 'interest shall be calculated from the date of entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.'" *Lohr*, 2018 WL 6199290, at *11 (citing 28 U.S.C. § 1961(a)). Therefore, Plaintiff is entitled to an award of post-judgment interest at the rate published for the week ending prior to the date of judgment until the date paid.

**3. Attorney Fees and Costs**

Finally, in its Motion for Default Judgment, Plaintiff requests attorney fees and costs. (Doc. 32 at 5). At the evidentiary hearing, the Court gave Plaintiff's counsel 7 days to supplement the record with affidavits to support an award of fees and costs. (*See* Doc. 36).

Plaintiff's counsel provided an affidavit only as to attorney's fees, which the Court will consider. (Doc. 35).

Under Texas law, attorney fees may be recovered pursuant to mortgage contracts. *U.S. Bank Nat'l Ass'n v. White*, No. 24-CV-1212, 2025 WL 714250, at *5 (N.D. Tex. Feb. 10, 2025). Here, the Note states that "the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees." (Doc. 1-1 at 3).

In the Fifth Circuit, courts apply a two-step method for determining a reasonable attorney fee award. *Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016). First, a court must calculate the "lodestar" amount, which is equal to the number of hours reasonably expended on the case multiplied by the hourly rate in the community for similar work. *Id*. at 392. In performing this calculation, the Court excludes any time that is excessive, duplicative, unnecessary, or inadequately documented. *Id*.; *see Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The party seeking reimbursement of attorney fees bears the burden to provide sufficient evidence that is adequate for the Court to determine reasonable hours expended. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir. 1995).

However, once the Court determines the lodestar, it may enhance or decrease the amount of attorney fees based on the relative weights of the twelve *Johnson* factors. *Serna v. Law Office of Joseph Onwuteaka, P.C.*, 614 F. App'x 146, 157 (5th Cir. 2015); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case;

(5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. 448 F.2d at 717–19. Notably, "[a] strong presumption exists that the lodestar represents a reasonable fee that should be modified only in exceptional circumstances." *Payne v. Univ. of S. Miss.*, 681 F. App'x 384, 390 (5th Cir. 2017) (quoting *Pembroke v. Wood County.*, 16 F.3d 1214 (5th Cir. 1994)).

Following the hearing on Plaintiff's Motion for Default Judgment, Plaintiff's counsel, Mr. Sammy Hooda, provided a Declaration Regarding Attorney Fees, which states Mr. Hooda is charging Plaintiff a flat fee of $2,500 to litigate the present case with counsel receiving partial payments after milestones are completed. (Doc. 35 at 1). Additionally, after judgment has been entered, Mr. Hooda will request another flat fee of $1,500 from Plaintiff to coordinate the sale of the Property, facilitate publication and mailing of all notices, and to have said sale confirmed. *Id.* at 2. Having reviewed Mr. Hooda's declaration, the Court finds this fee is reasonable. *Id.* Thus, Plaintiff should be awarded $4,000.00 in reasonable attorney fees from Defendant Kelly.

While Plaintiff seeks costs in its Motion for Default Judgment and its proposed order (Docs. 32, 34), no affidavit was provided by the Court's deadline to support these costs. Accordingly, Plaintiff should not be awarded costs from Defendant Kelly.

## IV. RECOMMENDATION

For the aforementioned reasons, the Court **RECOMMENDS** Plaintiff's Motion for Default Judgment be **GRANTED**. (Doc. 32). Further, the Court **RECOMMENDS** a final judgment be entered against Defendants Kelly and Aqua Finance, Inc. as follows:

It is therefore **ORDERED, ADJUDGED,** and **DECREED** that Plaintiff Lakeview Loan Servicing, LLC is the holder and beneficiary of that certain Note and Security Instrument executed by Defendant Michelle Kelly that encumbers the real property commonly known as 903 Chaparral St, Midland, TX 79706 ("Property") and more particularly described, to wit:

> LOT 12, BLOCK 5, QUAIL RIDGE ADDITION SECTION 2, AN ADDITION TO THE CITY OF MIDLAND, MIDLAND COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF OF RECORD IN CABINET G, PAGE 192, PLAT RECORDS OF MIDLAND COUNTY, TEXAS.

It is **FURTHER ORDERED** that the Property secures: the total outstanding balance due and owing under the Note and Security Instrument, including advances; charges; costs; fees; prejudgment interest; post-judgment interest; and costs of court.

It is **FURTHER ORDERED** that due to an event of default, Plaintiff Lakeview Loan Servicing, LLC, its successors and assigns, may enforce its lien against the interests of Defendants through a judicial foreclosure of the Property as provided under the Note, Security Instrument and Texas Rule of Civil Procedure 309.

It is **FURTHER ORDERED** that Plaintiff Lakeview Loan Servicing, LLC may further communicate with Defendants and all third parties, which is reasonably necessary to conduct the foreclosure sale of the Property.

It is **FURTHER ORDERED** that any notices regarding the foreclosure sale of the Property shall be mailed to the Defendants at the following addresses:

| | |
|---|---|
| Michelle Kelly | 903 Chaparral St<br>Midland, TX 79706<br>730 Duke Pl<br>Tyler, TX 75704 |
| Aqua Finance, Inc. | c/o Corporation Service Company<br>211 E7th St, Suite 620<br>Austin, TX 78701 |
| Midland Quail Ridge Homeowners Association, Inc. | c/o Bedrock Association Management, LLC |

| | |
|---|---|
| | 12808 W Airport Blvd #253<br>Sugar Land, TX 77478 |
| United States of America o/b/o Secretary of Housing and Urban Development | c/o Civil Process Clerk<br>Western District of Texas<br>601 NW Loop 410 Suite 600<br>San Antonio, TX 78216 |

It is **FURTHER ORDERED** that, after allowing all just and lawful credits and offsets as of the date of judgment, Plaintiff Lakeview Loan Servicing, LLC shall recover $363,660.63, which shall include principal in the amount of $298,332.95, interest in the amount of $45,345.22, escrow shortage in the amount of $14,989.71, and all other fees, including attorney's fees in the total amount of $4,000.00. Until judgment is entered, interest shall continue to accrue at 7.625% per annum, as a daily interest amount of $62.32, each day after May 29, 2026. Post judgment interest shall continue to accrue after the date of this Order at the federal post judgment interest rate, as established by 28 U.S. Code § 1961, or the highest rate allowed by law. Plaintiff Lakeview Loan Servicing, LLC may add post-judgment interest and additional amounts owed that are incident to the foreclosure sale of the Property as allowed under the Loan Agreement and Texas Law.

It is **FURTHER ORDERED** that all right, title, and interest in the Property described above that is held by the obligors of the Note and mortgagors of the Security Instrument is to be judicially foreclosed upon and the proceeds of the said judicial foreclosure sale shall be applied to the debt owed to Plaintiff Lakeview Loan Servicing, LLC and, remaining funds, if any, shall be deposited with the Clerk of this Court, in accordance with Texas and Federal law.

It is **FURTHER ORDERED** that Plaintiff Lakeview Loan Servicing, LLC shall have the remedy of judicial foreclosure against the Property pursuant to Texas Rule of Civil Procedure 309.

It is **FURTHER ORDERED**, that, should Plaintiff Lakeview Loan Servicing, LLC elect the foreclosure remedy of judicial foreclosure under Texas Rule of Civil Procedure 309, that an Order of Sale shall be prepared by the Clerk of the Court and issued to the US Marshall in Midland County, Texas in the amount of $363,660.63 plus costs of court, additional property taxes or insurance paid by Plaintiff Lakeview Loan Servicing, LLC, interest accrued at the federal post judgment interest rate each day after the date of this Order and any and all foreclosure costs and expenses, including attorney fees, that are allowed under the Loan Agreement and Texas Law that have accrued both before and after this judgment is signed.

It is **FURTHER ORDERED** that the successful bidder at the foreclosure sale shall be vested with all of Defendants' right, title, and interest in the Property.

It is **FURTHER ORDERED** that at the judicial foreclosure sale of the Property, Plaintiff Lakeview Loan Servicing, LLC may credit bid the amount of this Final Judgment plus all herein awarded advances, charges, costs, fees, and post-judgment interest, if any.

It is **FURTHER ORDERED** that if Plaintiff Lakeview Loan Servicing, LLC is the successful purchaser of the Property at the judicial foreclosure sale, then a writ of possession shall issue against Defendants, any person with an interest in the property arising from Defendants, or any occupant of the Property in accordance with Texas Rule of Civil Procedure 310.

It is **FURTHER ORDERED** that all writs necessary to enforce this judgment shall be issued.

It is **FURTHER ORDERED** that this Final Judgment disposes of all claims between all parties and is appealable.

It is **FINALLY ORDERED** that all relief not expressly granted herein is hereby **DENIED**.

SIGNED this 7th day of July, 2026.

RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).